†The Hon. William L. Holloway,
The Hon. Albert J. Galen,
The Hon. Albert P. Stark,
The Hon. John A. Matthe‾s,
*The Hon. Warren Toole,
**The Hon. Henry L. Myers,
} Associate Justices.

---

PETERSON, Respondent, v. NELSON, Appellant.

(No. 5,974.)

(Submitted November 13, 1926. Decided December 9, 1926.)

[252 Pac. 368.]

*Promissory Notes—Corporate Stock—Sales—Written Contracts of Indemnity — Parol Testimony — Admissibility—Laches—Waiver—Estoppel.*

Promissory Notes—Sale of Corporate Stock—Payment of Dividends—Indemnity.

1. Where, for the purpose of inducing the purchase of corporate stock, the seller gave the buyer a promissory note payable in

---

†Associate Justice Holloway re-elected on November 2, 1926, for a six-year term, died December 11, 1926.

*Appointed (and qualified) December 20, 1926, to serve for the unexpired term of Associate Justice Holloway, deceased, ending January 3, 1927.

**Appointed December 23, 1926, to serve from January 3, 1927, until the election and qualification of his successor; qualified January 5, 1927.

---

1. See 14 R. C. L. 43.

three years, the back of which bore the indorsement that when the stock had paid dividends to the amount of the purchase price, the note should be void, the agreement, evidenced by the note and indorsement, was one of indemnity within the meaning of section 8163, Revised Codes of 1921, and not of guaranty.

Contracts in Writing—Parol Testimony—Introduction by One Party Warrants Introduction of Same Character of Testimony by the Other.

2. Where one party to an action on a written contract is permitted to introduce evidence of preceding oral negotiations leading up to the making of the writing, thus varying its terms, his opponent may properly give oral testimony as to the same matter, over an objection that the testimony offered tends to contradict the writing.

Same.

3. Under the above rule (par. 2), *held* that where plaintiff relied upon a promissory note and certain matter indorsed on the back thereof as a complete contract in writing, but in his complaint set forth allegations explanatory of what was meant by the indorsement, and in his case in chief was permitted by parol testimony to contradict the writing, the court erred in refusing an offer of proof by defendant in support of his contention as to its meaning.

Promissory Notes—Delay in Bringing Action not Bar, When.

4. Mere delay in bringing action on a promissory note short of the period of limitation does not constitute a bar to its maintenance on the ground of laches.

Corporate Stock—Sale—Option Contract—Return of Stock Condition Precedent to Maintenance of Action, When—Waiver—Estoppel.

5. If an agreement relating to the sale of corporate stock gave the purchaser an option to return it on becoming dissatisfied with his bargain, return of it was a condition precedent to his right to maintain an action to recover the purchase price paid, and defendant in such an action could invoke the doctrine of waiver and estoppel because of plaintiff's retention of dividends paid on the stock after the accrual of his right to return it.

[1] Bills and Notes, 8 C. J., sec. 557, p. 376, n. 4. Contracts, 13 C. J., sec. 123, p. 303, n. 50 New. Corporations, 14 C. J., sec. 860, p. 58, n. 25. Evidence, 22 C. J., sec. 1459, p. 1098, n. 96. Guaranty, 28 C. J., sec. 1, p. 886, n. 6; sec. 2, p. 887, n. 19; sec. 8, p. 892, n. 70. Indemnity, 31 C. J., sec. 1, p. 419, n. 8; sec. 66, p. 465, n. 85.

[2] Evidence, 22 C. J., sec. 1728, p. 1295, n. 96.

[3] Appeal and Error, 4 C. J., § 2986, p. 1003, n. 61; sec. 3008, p. 1023, n. 48 New.

[4] Indemnity, 31 C. J., sec. 65, p. 465, n. 80 New.

[5] Indemnity, 31 C. J., sec. 58, p. 459, n. 20 New.

*Appeal from District Court, Beaverhead County; Henry G. Rodgers, Judge.*

2. See 10 R. C. L. 936.
3. See 10 R. C. L. 396.

ACTION by John Peterson against Nels Nelson. From a judgment for plaintiff on his motion for directed verdict defendant appeals. Reversed and remanded for a new trial.

*Messrs. Keeley & Keeley* and *Messrs. Smith & Kelly,* for Appellant, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

We submit that the entire contract in question is so indefinite and ambiguous as to be entirely unenforceable. (*Donovan* v. *Bull Mountain Trading Co.,* 60 Mont. 87, 198 Pac. 436; *Schwab* v. *McVey,* 54 Mont. 522, 171 Pac. 277; *Alderson* v. *Republican Courier Co.,* 69 Mont. 271, 221 Pac. 544; *Price* v. *Stipek,* 39 Mont. 426, 104 Pac. 195; 13 C. J. 266, 267.) That the contract must be explicit and certain in order to enforce it is a well-established principle. (*Woolsey* v. *Ryan,* 59 Kan. 601, 54 Pac. 664; *Missouri Ry.* v. *Bagley,* 60 Kan. 424, 56 Pac. 759; *Davie* v. *Lumberman's Min. Co.,* 93 Mich. 491, 24 L. R. A. 357, 574, 53 N. W. 625; *Wilkinson* v. *Heaven,* 58 Mich. 574, 26 N. W. 139; *McDonald* v. *Berwick,* 51 Mich. 79, 16 N. W. 240.)

Plaintiff brings the action on the theory of enforcing a guaranty, but there could have been no guaranty under the facts pleaded or shown, and the demurrer and objection to the introduction of any testimony should have been sustained upon this ground. If the indorsement on the note created anything it created an agreement of indemnity. (*Oppenheim* v. *National Surety Co.,* 105 Okl. 223, 231 Pac. 1076; *Kilbride* v. *Moss,* 113 Cal. 432, 54 Am. St. Rep. 361, 45 Pac. 812; *Bullock* v. *Lewis,* 22 Colo. App. 449, 125 Pac. 849; *Jenckes* v. *Rice,* 119 Iowa, 451, 93 N. W. 384; *Doorly* v. *Butte & Western Silver Mines,* 71 Mont. 529, 230 Pac. 779.)

In order to maintain the action, the complaint should have disclosed that a return or tender of the stock back to the defendant had been made. We submit that the tender or return of the stock to plaintiff was a condition precedent to suit.

(*Porter* v. *Plymouth Gold Min. Co.,* 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 938.)

It is the contention of the defendant that, if the contract was ambiguous and uncertain on its face and its meaning was not clear, but that it was susceptible of parol testimony it was the duty of the court to permit proof relative to all of the surrounding facts and circumstances bearing upon the transaction. This the court did not do, and we respectfully submit that the judgment of the lower court should be for that reason reversed. (*Alywin* v. *Morley,* 41 Mont. 191, 108 Pac. 778; *State* v. *Broadwater Elevator Co.,* 61 Mont. 215, 201 Pac. 687; *Barkemeyer Grain etc. Co.* v. *Hannant,* 66 Mont. 120, 213 Pac. 208; *Berne* v. *Stevens,* 67 Mont. 254, 215 Pac. 803; *Mc-Caull-Dinsmore Co.* v. *Stevens,* 59 Mont. 206, 194 Pac. 213; *United States Nat. Bank* v. *Chappell,* 71 Mont. 553, 230 Pac. 1084; *Baroch* v. *Greater Montana Oil Co.,* 70 Mont. 93, 225 Pac. 800; *Brockway* v. *Blair,* 53 Mont. 531, 165 Pac. 455; *McDonald* v. *McNinch,* 63 Mont. 308, 206 Pac. 1096; *Donnell* v. *Humphreys,* 1 Mont. 518; 22 C. J. 1269.) Even prior "oral negotiations and promises illumining the design or intent" may be proved in case of ambiguity. (*Ming* v. *Pratt,* 22 Mont. 262, 56 Pac. 279.) Parol testimony is also admissible to show the presence or lack of consideration for the written contract. (*United States Nat. Bank* v. *Chappell,* 71 Mont. 553, 230 Pac. 1084; *Noyes' Estate* v. *Granite-Alaska Co.,* 57 Mont. 511, 189 Pac. 522; *Noyes* v. *Young,* 32 Mont. 226, 79 Pac. 1063.)

Admittedly, the written contract does not show clearly, or from its four corners, the whole contract. Where the writing does not appear to show the whole contract, the omitted parts may be supplied by parol testimony. (*Brockway* v. *Blair, supra.*) But our decisions go even further, and even though it could be said that the written instrument was complete in itself, still the oral testimony offered by the defendant was admissible. Evidence of an oral agreement collateral to a written instrument complete in itself is admissible in proof of a

matter concerning which the written contract is silent. (*Bennett* v. *Tillman,* 18 Mont. 28–30, 44 Pac. 80; *Bohn Mfg. Co.* v. *Harrison,* 13 Mont. 293, 34 Pac. 313; *Clark* v. *Ducheneau,* 26 Utah, 97, 72 Pac. 331; *Central Bank of Bingham* v. *Stephens,* 58 Utah, 358, 199 Pac. 1018; *Lawrence* v. *Perlstein,* 102 Okl. 58, 226 Pac. 63; *Afton Live Stock Co.* v. *Peterson,* 62 Utah, 437, 220 Pac. 710.)

*Mr. John Collins,* for Respondent, submitted a brief and argued the cause orally.

Defendant contends that the contract is void for ambiguity. On its face the contract is an ordinary promissory note, conforming to the requirements of a negotiable instrument. The indorsement placed thereon by defendant, by the interpretation of both parties, merely explains an alternative method of payment, to-wit: by earnings of the corporation. If the dividends are sufficient, then defendant is discharged; if insufficient, the defendant is held. The memorandum has nothing to do with the amount to be paid and does not extend the time for payment. If, as defendant contends, his language is ambiguous, it does not render void the contract which precedes his signature. The covenants are severable. (*Federal Trust Co.* v. *Coyle,* 34 Okl. 635, 126 Pac. 800; *Modern Brotherhood of America Lodge* v. *Bailey,* 50 Okl. 54, Ann. Cas. 1918E, 744, L. R. A. 1916A, 551, 150 Pac. 673; *Ganong & Chenweth* v. *Brown,* 88 Miss. 53, 117 Am. St. Rep. 731, 40 South. 556; *Davisson* v. *Smith,* 60 W. Va. 413, 55 S. E. 466; *Minnesota Sandstone Co.* v. *Clark,* 35 Wash. 466, 77 Pac. 803.) The note which defendant signed is a positive and definite contract to pay. The indorsement which he placed thereon deals only with the method by which defendant may be relieved from paying. It does not even remotely suggest that plaintiff must forego any right; so far as plaintiff is concerned it is surplusage. If void, it does not affect defendant's absolute promise. (*Central New York Tel. & Tel. Co.* v. *Averill,* 199 N. Y. 128, 139 Am. St.

Rep. 878, 32 L. R. A. (n. s.) 494, 92 N. E. 206; *King* v. *King,*
63 Ohio, 363, 81 Am. St. Rep. 635, 52 L. R. A. 157, 59 N. E.
111; *Miller* v. *Atchison, T. & S. F. Ry. Co.,* 97 Kan. 782, 156
Pac. 780.)

When a contract is reduced to writing all prior and contem-
poraneous agreements concerning its matter are held to be
merged in the writing. (Secs. 7520 and 10517, Rev. Codes
1921; 13 C. J. 537.) Defendant has a right to explain any
extrinsic ambiguity that may exist, or to explain the circum-
stances under which the note was made, or to describe its con-
sideration. He has not the right, under the guise of explaining
an ambiguity, to detail alleged conditions of the contract which
are not suggested by its language. Section 10517, which per-
mits the explanation of an ambiguity, limits that explanation
to extrinsic ambiguity. (*Fisher* v. *Briscoe,* 10 Mont. 124, 25
Pac. 30; *Farmers' Loan & Trust Co.* v. *Commercial Bank,* 15
Wis. 424, 82 Am. Dec. 691; *Guaranty Inv. Co.* v. *Gamble,* 102
Kan. 791, 171 Pac. 1152; *Duffey* v. *Scientific American C.
Dept.,* 30 Okl. 742, 120 Pac. 1088; *Minnesota Sandstone Co.* v.
*Clark,* 35 Wash. 466, 77 Pac. 803; *Hogan* v. *Kelly,* 29 Mont.
485, 75 Pac. 81; *Carman* v. *Staudaker,* 20 Mont. 364, 51 Pac.
738; *State ex rel. Broadwater Farms Co.* v. *Broadwater Ele-
vator Co.,* 61 Mont. 215, 201 Pac. 687.)

Parol evidence is admissible to show why an instrument was
executed or what is to be done with it; but not to show what
the parties mean by their language except in so far as it lacks
clarity, and then only upon the subjects suggested in the
instrument itself. (Secs. 7538, 7539, Rev. Codes 1921.) Where
the contract contains terms which may mean either of two
things (equivocations), parol evidence is admissible. (22 C. J.
1182; *Butte Water Co.* v. *City of Butte,* 48 Mont. 386, 138 Pac.
195; *Berne, Trustee,* v. *Stevens,* 67 Mont. 254, 215 Pac. 803;
*Eastman* v. *Piper,* 68 Cal. App. 554, 229 Pac. 1002; *Daniel* v.
*Pappas,* 93 Okl. 165, 220 Pac. 355; *Rouan* v. *Casper Brick &
Tile Co.,* 29 Wyo. 154, 211 Pac. 1102; *Salem King's Products*

*Co.* v. *Ramp,* 100 Or. 329, 196 Pac. 401; *Allen* v. *Hendrick,*
104 Or. 202, 206 Pac. 733; *National Cash Register Co.* v. *Wall,*
58 Mont. 60, 190 Pac. 135; *Brockway* v. *Blair,* 53 Mont. 531,
165 Pac. 455; *Joy* v. *Rousseau,* 72 Cal. App. 179, 236 Pac. 972;
*Griffin* v. *Lear,* 123 Wash. 191, 212 Pac. 271.)

It is admitted that defendant wrote the indorsement. There-
fore, if any uncertainty exists which cannot be removed by the
ordinary rules, his language will be construed against him.
(13 C. J. 544; *Daley* v. *Torrey,* 69 Mont. 599, 223 Pac. 498;
*Kasun* v. *Todevich,* 71 Mont. 315, 229 Pac. 714; *Weir* v. *Ryan,*
68 Mont. 338, 218 Pac. 947.)

MR. JUSTICE STARK delivered the opinion of the court.

The complaint in this action alleges that on May 8, 1915, the
defendant sold to plaintiff 1,000 shares of stock in a mining
company, of which the defendant was then an officer and di-
rector, for the sum of $1,000, and, as an inducement for the
purchase of the same by the plaintiff, "represented and guar-
anteed" to plaintiff that he would receive dividends thereon
within three years from the date of purchase amounting to at
least the sum of $1,000, and interest thereon at the rate of
eight per cent per annum until paid; that on said date "as
evidence of said guaranty" the defendant executed and de-
livered to plaintiff his promissory note for the sum of $1,000,
payable three years after date, with interest at eight per cent
per annum, and wrote upon the reverse side thereof the follow-
ing words: "This note is given to secure 1,000 shares of stock
of American Tin Dredging Company now owned by John
Peterson and whenever said stock *is has* paid the above amount
together with interest then this note becomes void and is to be
returned.

                                        "NELS NELSON."

In the next paragraph it is alleged: "That by the language
contained in said indorsement defendant intended to state, and
said language is intended to mean, that defendant made said

77 Mont.—35

promissory note with the intent and purpose to guarantee to plaintiff, by the time said promissory note matured, the payment of dividends on said corporate stock in an amount at least equal to said purchase price and interest as expressed in said note; and that any part of the sums mentioned in said note which might remain unpaid out of the dividends or earnings from said corporate stock at the time said promissory note would mature must be paid by the defendant; and that if, by the time said note matured, the dividends or earnings received by plaintiff from said corporate stock should equal or exceed the sum expressed upon the face of said note including interest accrued at the time of payment, then said note should be surrendered to defendant for cancellation.''

It is then alleged that plaintiff is still the owner and holder of the stock and note; that the only money ever earned by said stock was the sum of $300, which he received ''from defendant and said corporation'' in December, 1919, and credited as interest upon the note; that no other sum has been paid, and he asks judgment against the defendant for the sum of $1,000, with interest from May 8, 1915, less the sum of $300 paid, together with attorney's fees and costs.

Defendant filed a general demurrer to the complaint, which was overruled, whereupon he filed an answer thereto, in which he admitted that on May 8, 1915, he was an officer and director of the mining corporation mentioned in the complaint; that he executed the note and the indorsement thereon set out in the complaint, but denied the other allegations therein contained. The answer then set out seven affirmative defenses, only two of which, *viz.*, the sixth and seventh, require notice. In the sixth affirmative defense it is alleged that the 1,000 shares of stock were purchased by plaintiff from the corporation for the sum of $1,000, which the plaintiff then and there paid to the corporation; that the same was purchased upon the recommendation of defendant, and that prior thereto he stated to plaintiff that, if plaintiff would purchase the same, and at the end of

three years was not satisfied with his purchase, plaintiff was to deliver the stock to defendant at said time, and thereupon defendant would reimburse him for the money paid for the stock, less dividends received by plaintiff during the three-year period, with interest; that, pursuant to this statement, and for the purpose of reducing the same to writing, the defendant, on May 8, 1915, executed the note and the indorsement thereon, as set out in the complaint. Following this, it is stated ''that at the time said instrument was made and delivered it was thoroughly understood and agreed by and between the plaintiff and defendant that the meaning of the words, letters and figures upon the back thereof was as follows, to-wit: That, in the event the plaintiff did not receive within three years the sum of $1,000, together with interest thereon at the rate of eight per cent per annum, from the dividends declared and paid upon the captial stock of said corporation, the plaintiff was to have the option of delivering said stock, at the end of the said three-year period, to the defendant, and receive from the defendant the said sum of $1,000, less the amount of any dividends paid upon said stock, together with interest thereon at the rate of eight per cent per annum, from May 18, 1915.''

The answer then sets out that no dividend was paid on the stock within the three-year period, but that during all of said time the stock had a market value of more than $1 per share, and that at the end of the three-year period the defendant was ready and willing to pay back to the plaintiff. the amount of his investment, with interest, but that defendant never tendered the stock to the defendant, or notified him that he desired to return the stock and be reimbursed; that by failing to do so the plaintiff waived his right to do so, and that until the year 1923 the defendant believed that the plaintiff had elected to retain and hold the stock and to consider the option and said instrument at an end, and that for a period of more than two years after May 8, 1918, the defendant could have sold said stock for a sufficient sum to have reimbursed

the plaintiff for the amount of his investment, but that for a period of two years prior to the commencement of this action the market price of said stock had been much less than the amount of the plaintiff's investment therein, with the interest thereon; that at the time the $300 dividend was paid thereon, in December, 1919, the market value of the stock was greatly in excess of the amount of plaintiff's investment and the interest, and that, by accepting the dividend, the plaintiff again elected to consider the defendant's agreement terminated; that, by reason of plaintiff's omission to demand payment at the end of the three-year period, or within a reasonable time thereafter, and by accepting said $300 dividend in December, 1919, the plaintiff intentionally and deliberately led the defendant to believe that he elected to keep the stock and its benefits, and to release the defendant from any obligation in connection therewith; and that by reason of these acts the plaintiff has misled the defendant to his prejudice.

In the seventh affirmative defense substantially the same allegations are made as in the sixth, and it is alleged that by reason of said facts the plaintiff is estopped from maintaining the action.

Issue was joined upon the allegations of the affirmative defenses by the plaintiff's reply thereto.

At the opening of the trial the defendant objected to the introduction of any evidence upon the ground that the complaint did not state a cause of action, which objection was overruled. The plaintiff and defendant each introduced testimony, and at the close of all the evidence plaintiff moved for a directed verdict, which motion was sustained and judgment entered in his favor. The defendant duly moved for a new trial, which was denied, and he has appealed from the judgment.

The first point raised by defendant's assignments of error is that the complaint fails to state facts sufficient to constitute a cause of action. To dispose of this contention it is necessary,

in the first instance, to determine the nature of the right which plaintiff is seeking to enforce.

The complaint shows that the note and the indorsement [1] thereon were executed and delivered at the same time; that they related to the same transaction, had between the same parties, and therefore they are to be taken together. (Sec. 7533, Rev. Codes 1921.) Plaintiff refers to the agreement as one of "guaranty," but this is a misnomer, since a guaranty "is a promise to answer for the debt, default or miscarriage of another" (*Id.*, sec. 8171), and that situation is not disclosed. The agreement embodied in the note and indorsement, as amplified by the allegations of the complaint, simply means that the defendant covenanted to protect the plaintiff against loss which he might suffer by reason of purchasing the stock in question, if the dividends thereon were not sufficient within three years to repay the amount of plaintiff's investment, with interest thereon at eight per cent per annum from May 8, 1915. This makes the agreement one of indemnity, as defined in section 8163, Revised Codes of 1921. (14 R. C. L., p. 43; *Bullock* v. *Lewis,* 22 Colo. App. 449, 125 Pac. 849; *Kilbride* v. *Moss,* 113 Cal. 432, 54 Am. St. Rep. 361, 45 Pac. 812; *Oppenheim* v. *National Surety Co.,* 105 Okl. 223, 231 Pac. 1076.)

Counsel argue that the agreement pleaded is so indefinite in its terms and provisions that it cannot be enforced, and that the complaint shows on its face that there was no consideration therefor.

If the writings alone were to be considered, there might be some force to the first of these contentions; but, as we read and understand the complaint, it sets out facts tending to show that the indorsement does not completely recite the agreement intended to be made by the defendant, thereby tendering an issue as to what the agreement really was.

Peterson was under no obligation to part with his $1,000 in the purchase of shares of stock in the mining company at the time he purchased them. To induce him to do so, Nelson

agreed that he would indemnify him to the extent and in the manner stated, and, as a result of Nelson's agreement, Peterson did part with his money. This was a sufficient consideration within the provisions of section 7503, Revised Codes of 1921.

It is our conclusion that the contract as alleged in the complaint is definite enough to be enforced, and that it is supported by a sufficient consideration, and so the complaint states a cause of action.

It will not be necessary to consider all of the assignments of error in detail. The principal point to be considered is whether the court made a proper application of the parol evidence rule.

The facts in the case, summarized, are these: Nelson, the defendant, was interested in the mining company. He was trying to sell some of the stock of this concern to the plaintiff, Peterson, and finally succeeded in his efforts. Peterson bought 1,000 shares for $1,000, and in connection therewith some kind of an agreement was made by which Nelson agreed to indemnify Peterson against loss on account of this purchase. The agreement, in whole or in part, was reduced to writing.

Usually, as in this case, a written contract has been preceded by oral negotiations and the terms thereof agreed upon before they are reduced to writing. Unless the contract be one which the statute requires to be in writing, the parties may allow it to rest in parol, and then it may be proved in the usual manner. But, if they reduce its terms to writing, then the writing is to be considered as containing all of them, and no evidence of the terms, other than the writing itself, can be admitted except where a mistake or when the validity of the agreement is the fact in dispute. (Secs. 10517 and 7530, Rev. Codes 1921.)

What happened here? An agreement of some sort was made by the defendant to induce plaintiff to buy this stock. Peterson bought it, and paid the corporation $1,000 therefor. Contemporaneously therewith Nelson gave to Peterson the note with the indorsement thereon, which is above set forth.

The plaintiff in his argument in this court relies upon the
[2, 3]   note and the indorsement thereon as a contract which
is so complete and definite as to preclude the right of the
defendant to give any parol evidence tending to vary or contra-
dict it.   The strength of the plaintiff's position is very much
weakened by the fact that, before he could make out a *prima
facie* case against the defendant, he was obliged to allege that,
by the language used in the instrument, ''the defendant in-
tended to state and said language is intended to mean'' some-
thing which harks back to their preliminary negotiations, and
which could not be fairly deduced from the ambiguous and
indefinite wording of the indorsement itself.   Certainly the
bald reading thereof would not convey to an ordinary person
the meaning which is attributed to it in the allegations of the
complaint.   In the course of the testimony to sustain his theory
of the case, plaintiff went into all of the details leading up to
the execution of the note and indorsement, gave his version of
what was said and done, and, in effect, contradicted the very
terms of the indorsement by showing that the recital therein
to the effect that he was the owner of the stock at the time
the agreement was entered into was not true in fact, but that
the same was then owned by the defendant, or the corporation,
and did not become his until the transaction was completed.
Without the aid of this testimony contradicting an essential
matter of the indorsement and adding thereto a meaning which
its terms did not fairly import, the plaintiff would not have
been able to make out a *prima facie* case.

When the plaintiff thus took advantage by the allegations of
his complaint and by means of parol testimony in support
thereof to contradict and vary the terms of the indorsement,
and to attribute thereto a meaning other than that imported
by its language, he opened the door to the defendant to con-
tradict these contentions and by similar proof to establish his
assertions as to what agreement was made and to establish
his contentions as to the meaning of the language used in the

indorsement. The allegations of the complaint and the plaintiff's testimony in support thereof, as well as the defendant's answer and the statements contained in his offers of proof, all show that the whole agreement between them was not embraced in the writings, and that each was obliged to resort to parol proof to establish just what this agreement was. Under the issues framed by the pleadings that right should not have been denied to either. (*Brady* v. *Kern* (C. C. A.), 222 Fed. 873; *Hallenbeck & Son* v. *Garst,* 96 Iowa, 509, 65 N. W. 417; *Perkins* v. *Adams,* 30 Vt. 230; *Arbeiter* v. *Day,* 39 Conn. 155; *Witz* v. *Fite,* 91 Va. 446, 22 S. E. 171.) All of these cases are to the effect that, where one party has introduced evidence of the conversations and negotiations leading up to a written agreement, and which varies the terms thereof as written, the other party may give parol evidence as to the same matters, notwithstanding an objection that the evidence offered by him tends to vary or contradict the writing.

By reason of the foregoing rule, the court erred in sustaining the plaintiff's objections to defendant's offers of proof set out in specifications of error 16, 18 and 19, and also in sustaining the plaintiff's objections to the question set out in specification 17, all of which related to testimony offered on behalf of defendant to sustain his contentions as to what the agreement was. Had the testimony so excluded been admitted, questions of fact would have been presented for determination by the jury, and it would then have been the duty of the court to submit the case to the jury with appropriate instructions upon the conflicting theories of the parties; hence the court erred in granting plaintiff's motion for a directed verdict.

If the agreement was as contended for by plaintiff and the [4] defendant thereby bound himself to pay the note "just like he would pay any other note" upon the happening of the designated contingency, as testified by the plaintiff, then a mere delay, short of the period of limitation, would not estop him from seeking a recovery thereon, or constitute a bar to

the maintenance of the action on the ground of laches (*United States Nat. Bank of Red Lodge* v. *Shupak,* 54 Mont. 542, 172 Pac. 324; *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315), and he would not be required to return the stock as a condition precedent to the commencement of the action.

On the other hand, if the agreement was in accordance with [5] defendant's contentions, as indicated in his answer and the evidence which he offered to produce in support thereof, then a return or offer to return the stock to defendant was a condition precedent to his right to maintain the action. (Sec. 7405, Rev. Codes 1921; *Porter* v. *Plymouth Gold Min. Co.,* 29 Mont. 347, 101 Am. St. Rep. 569, 74 Pac. 938.) Likewise, if it should be found that the agreement was as claimed by the defendant, he would be in position to invoke the doctrine of waiver and estoppel against the plaintiff. Under the agreement which he contends was made, the receipt of dividends on the stock after the accrual of the plaintiff's right to return it and to receive from defendant the amount he paid therefor would be treated as an election by plaintiff to retain it and a waiver of his right to recover the amount paid for it from the defendant. (James on Option Contracts, sec. 829; *Laughlin* v. *United States Rolling-Stock Co.* (C. C.), 64 Fed. 25.)

For these reasons we are of opinion that the court should not have stricken from the defendant's answer the portions thereof mentioned in specifications of error 7, 8, 9 and 10.

The cause is remanded to the district court, with direction to grant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES GALEN and MATTHEWS and HONORABLE A. J. HORSKY, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.